IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH RAY BOGGAN,                       )
                                          )
        Plaintiff,                        )
v.                                        )        CASE NO. 2:04-cv-660-F
                                          )            (WO)
DEXTER McLENDON, *et al.*,                 )
                                          )        [DO NOT PUBLISH]
        Defendants.                       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Ray Boggan (hereinafter "Plaintiff") brings this discrimination action against his former employer, the Greenville Water Works & Sewer Board of the City of Greenville, Alabama (hereinafter "Water Board") and the Mayor of the City of Greenville, Dexter McLendon, (hereinafter "McLendon").[1]  (Doc. # 1, Compl).  In this case, Plaintiff alleges violations of his due process and equal protection rights secured by the First and Fourteenth Amendments under 42 U.S.C. § 1983 based upon alleged racial discrimination. (*Id*.).  Plaintiff also alleges race discrimination claims under 42 U.S.C. § 1981 and pendent state law claims against Defendants.

This cause is before the court on the defendants' motion for summary judgment. (Doc. # 18).  Having reviewed the submissions of the parties, the court finds that the motion for summary judgment in relation to Plaintiff's federal claims under 42 U.S.C. §§ 1981 and 1983; and state law claims of outrage, intentional infliction of emotional distress,

---

[1] McLendon is sued in his individual and official capacities.

wantonness, and respondeat superior is due to be GRANTED. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim of procedural due process and thus concludes that this claim is due to be DISMISSED WITHOUT PREJUDICE.

## I. FACTS AND PROCEDURAL HISTORY

The court has carefully considered all deposition transcripts,[2] exhibits and documents submitted in support of the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

This lawsuit stems from Plaintiff's termination from the Water Board on June 28, 2002. Plaintiff, an African-American male, began his employment with the Water Board on May 18, 1998 as a laborer. Subsequently, Plaintiff was promoted to the position of a meter reader and he maintained that position until his termination.

During all relevant times, McLendon, the Mayor of Greenville, Alabama, was also

---

[2] The court notes that Plaintiff's evidentiary filings rely heavily on hearsay and are rarely based on personal knowledge. Many portions of Plaintiff's deposition fall woefully short of the requirements for admissibility under Rule 56(c). *See Macuba v. DeBoer*, 193 F.3d 1316, 1322-1325 (11th Cir.1999) ("the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose."). Plaintiff's deposition transcript is full of conclusory statements, unsupported allegations, and expressions of opinion rather than fact. Moreover, the deposition transcript also contains hearsay, and perhaps double hearsay, regarding statements made by other Water Board employees. (*See e.g.,* Pl. Dep. at pp. 65, 104-107, 110-111). Such inadmissible hearsay cannot be considered by the court when ruling on a summary judgment motion. *See Givhan v. Electronic Eng'rs*, 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998). Accordingly, for the purposes of this motion, the portions of Plaintiff's deposition transcript which contain such inadmissible statements will not be considered by this court.

General Manager of the Water Board.[3]  His duties as General Manager included supervision of all employees of the Water Board, and the right to hire and fire employees.

One day during April or May of 2002, McLendon saw Plaintiff hugging an acquaintance in front of the Butler County Courthouse.  This acquaintance[4] was a Caucasian female and one of Plaintiff's former schoolmates.[5]  Thereafter, McLendon told Plaintiff's supervisor, Jerry McCullough (hereinafter "McCullough"), a Caucasian male, that he disliked Plaintiff.  McLendon also told Gerald Johnson (hereinafter "Johnson"), an African-American supervisor, that he disliked Plaintiff because he had seen him hugging a woman on the steps of the Butler County Courthouse when he should have been working.[6]

On June 25, 2002, Jarrett Lowery (hereinafter "Lowery"), a Caucasian employee of the Water Board, accused Plaintiff of stealing his wallet.  McLendon, commenced an investigation into the incident by speaking to both Plaintiff and Lowery in his office.  After receiving conflicting responses, McLendon asked them to submit to a polygraph examination and both agreed to do so.

On June 28, 2002, Plaintiff submitted to a polygraph examination.  Prior to the

---

[3] It is tradition for the Mayor to serve as General Manager of the Water Board.  (Lewis Dep. at p. 6).

[4] In his deposition, Plaintiff testified that he could not remember the name of the female acquaintance.  (Pl. Dep. at p. 87).

[5] Plaintiff testified that, although it was his lunch hour and he should have been at work at that time, he drove his company vehicle to the courthouse. (*Id*. at pp. 87, 91, 100-101).

[6] (Johnson Aff. at ¶ 5).

administration of the examination, Plaintiff disclosed to the examiner, C. Gerald Carter (hereinafter "Carter"), the following information:

> [O]n June 25, 2002, at approximately 2:30 p.m., [Plaintiff and Lowery] went to [Plaintiff's] residence in Lowery's city vehicle; that while at his residence, he prepared one alcoholic beverage for Lowery; that, he did not consume any alcohol on this visit due to [Plaintiff's] wife being present; and that, he had consumed alcohol on numerous occasions in the past similar to this one.

(Def. Ex. 5).[7]  Plaintiff, however, denied any involvement or knowledge of the alleged theft of Lowery's wallet.  After conducting the polygraph examination, Carter concluded that Plaintiff was "not attempting deception" when he answered the questions regarding the theft of Lowery's wallet.  (*Id.*).

On the same date, after conducting the examination, Carter verbally informed McLendon of the results of Plaintiff's polygraph test and his admission of consuming alcohol on past numerous occasions during working hours.  McLendon also received Carter's written report of the examination.  Immediately thereafter, McLendon called Plaintiff into his office and questioned him about his admission.  Plaintiff asserted that he had not taken Lowery's wallet and maintained that he told Carter the truth about drinking on the job.  McLendon explained to Plaintiff that such conduct was a violation of the Water Board's alcohol and drug policy and constituted grounds for termination.  McLendon further informed Plaintiff that he was discharged.  McLendon thus prepared a personnel memorandum advising

---

[7]  This admission is hotly disputed.  In his deposition, Plaintiff testified that this admission was true (Pl. Dep. at pp. 48-49), but then later testified that he never admitted to drinking during working hours (*Id.* at pp. 142-143).

Plaintiff of his dismissal from the Water Board due to his acts of insubordination and possession or use of intoxicating liquors, or proceeding to or from work under the influence of liquor or controlled substances. Plaintiff received a copy of the memorandum and signed an acknowledgment establishing his receipt of the memorandum and notice of his discharge. Plaintiff's discharge was effective on that date, June 28, 2002.[8]

Although he was advised by McLendon that he had a right to appeal the discharge decision, Plaintiff failed to submit an appeal. Notwithstanding, in a letter to McLendon dated July 8, 2002, Plaintiff requested reinstatement to his position and apologized for his conduct. The Water Board treated this letter as a grievance and scheduled a grievance hearing on July 11, 2002. The hearing was held and on, July 15, 2002, the Grievance Committee[9] unanimously decided that Plaintiff's employment should not be reinstated. Having considered Plaintiff's work history, his admissions to Carter, and the interviews conducted with Plaintiff, Wink Fussell, and McLendon, the Committee opined that Plaintiff had shown a predisposition to carelessness with regard to the Water Board's policies and property during his employment. Shortly thereafter, on July 23, 2002, the Water Board reviewed the decision of the Grievance Committee and upheld that decision. Hence, Plaintiff's request for reinstatement was denied.

---

[8] It is undisputed that McLendon also dismissed Lowery on that date for the same reasons Plaintiff was terminated.

[9] The Grievance Committee consisted of Bruce Branum, Brenda Huckaba, and Michael Wayne Cook. The Committee was appointed by the Water Board.

Almost two years later, on July 6, 2004, Plaintiff filed this action against the Water Board and McLendon alleging violations of his constitutional rights secured by the First and Fourteenth Amendments under 42 U.S.C. § 1983 (hereinafter "Section 1983"). (Doc. # 1, Compl.). In his Complaint, Plaintiff alleges the following eight counts against Defendants: (Count I) a procedural due process claim, (Count II) a due process claim under the Alabama Constitution, (Count III) an outrage claim, (Count IV) an intentional infliction of emotional distress claim, (Count V) a claim under 42 U.S.C. § 1981 (hereinafter "Section 1981"), (Count VI) due process and equal protection claims under 42 U.S.C.§ 1983, (Count VII) a wantonness claim, and (Count VIII) a respondeat superior claim. Plaintiff seeks compensatory damages, punitive damages, court costs, attorneys' fees, reinstatement, pre-judgment and post-judgment interest, and declaratory and injunctive relief. (*Id.*).

On April 22, 2005, Defendants filed a motion for summary judgment accompanied by a memorandum brief and exhibits. (Docs. # 18 & 19). Plaintiff filed his response to the motion on May 25, 2005. (Doc. # 23). Defendants filed a reply thereto on June 1, 2005. (Doc. # 24). Thus, the motion is ripe for this court's consideration.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction). The parties do not contest personal jurisdiction, and the court finds adequate allegations in support of personal jurisdiction.

### III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

Defendants move for summary judgment in their favor on all of Plaintiff's claims. In doing so, Defendants argue that there is no genuine issue as to any material fact and that they are entitled to judgment in their favor as a matter of law.  Plaintiff opposes Defendants' motion arguing that questions of fact exist and the case must proceed to trial.  The court has considered all arguments proffered by the parties and concludes that Plaintiff's claims, in one way or another, are due to be dismissed.

A.     *Abandoned Claims*

In his response to the motion for summary judgment, Plaintiff explicitly abandons several of his claims.  (Pl. Br. at p. 5).  Specifically, Plaintiff abandons his claims for

procedural due process (Count I), outrage (Count III), intentional infliction of emotional distress (Count IV), wantonness (Count VII) and respondeat superior (Count VIII).  In addition, Plaintiff concedes that he cannot establish a prima facie case for his equal protection claim under Section 1983 (Count VI) and, as a result, abandons that claim.

Thus, the only remaining claims before the court are Plaintiff's race association discrimination claims under Sections 1981 and 1983 (Counts V and VI), and his procedural due process claims under state law (Count II) and federal law as pursued under Section 1983 (Count VI).  The court thus turns to address those claims.

B.   *Merger of Claims*

At the outset, the court notes that Plaintiff properly combined his Sections 1983 and 1981 claims in his response to the motion for summary judgment.  However, the court must clarify that "[w]here the defendants are state actors, as here, a plaintiff's § 1981 claims merge into his or her § 1983 claims, and courts treat the claims as 'a single claim.'"  *Taylor v. Ala.*, 95 F. Supp. 2d 1297, 1309 (M.D. Ala. 2000) (citing *Godby v. Montgomery Co. Bd. of Educ.*, 996 F. Supp. 1390, 1411 (M.D. Ala. 1998)); *see also Moore v. State of Ala.,* 989 F. Supp. 1412, 1420-21 (M.D. Ala. 1997), *aff'd,* 178 F.3d 1303 (11th Cir. 1999); *Malone v. Parker*, 953 F. Supp. 1512, 1517 (M.D. Ala. 1996); *Busby v. City of Orlando,* 931 F.2d 764, 771-772 n. 6 (11th Cir. 1991) (noting that "section 1981 can provide no broader remedy against a state actor than section 1983").  "The Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the

rights guaranteed in § 1981 by state governmental units . . . ." *Pearson v. Macon-Bibb County Hosp. Auth.,* 952 F.2d 1274, 1278 n. 3 (11th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733 (1989)).  Thus, Plaintiff "has no claim for damages against the [defendants] in this case under § 1981.  To the extent that injunctive relief remains available to him under § 1981, it would simply duplicate the equitable relief he could receive under § 1983." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991).

However, the court is not required to, and need not, dismiss Plaintiff's merged § 1981 claims. *Taylor,* 95 F. Supp. 2d at 1309.  As explained in *Godby,* "where claims have merged . . . , it is not necessary for th[e] court to dismiss them on that basis.  The court need only treat them as a single claim." 996 F. Supp. at 1411 n. 14.  Thus, because Plaintiff's Sections 1981 and 1983 claims are one and the same, the court will treat them as one claim and henceforth will refer only to Section 1983 in analyzing these claims.

C.   *Section 1983 Claims*

1.   *Association Discrimination*

Plaintiff claims that he was terminated because of his close association with his Caucasian acquaintance as observed by McLendon on the steps of the Butler County Courthouse.  Plaintiff's association discrimination claims brought under § 1983[10] are thus

---

[10]   Such association discrimination claims are usually brought under Section 1981.  The Eleventh Circuit has explained that Section 1981 prohibits discrimination based upon an interracial marriage or association. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d at 190 (11th Cir. 1986).  Moreover, "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race." *Id*. at 892.

claims alleging violation of his right to equal protection as provided in the Fourteenth Amendment.[11]

Without doubt, Plaintiff has an equal protection right to be free from intentional racial discrimination. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991).[12] "In order to establish a violation of the Equal Protection Clause, appellees must prove discriminatory motive or purpose." *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507-1508 (11th Cir. 1995) (citing *Whiting v. Jackson State Univ.,* 616 F.2d 116, 122 (5th Cir. 1980)).[13]

In evaluating Plaintiff's equal protection claim, this court must use the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .[14] In *McDonnell Douglas*, the Supreme Court established the allocation of the

---

[11] The court notes that Plaintiff alleges in his Complaint that this claim is brought under the First Amendment, hence the court will address his First Amendment claim later in this Opinion.

[12] "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S. 229, 239 (1976). The Equal Protection clause protects individuals from treatment based upon "improper motives" such as race. *Bass v. City of Albany,* 968 F.2d 1067, 1069 (11th Cir. 1992); *see also Busby v. City of Orlando,* 931 F.2d 764, 774 (11th Cir. 1991) (holding that the equal protection clause provides the plaintiff "a right to be free from racial discrimination") (citation omitted); *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003) (recognizing an equal protection right to be free from employment discrimination).

[13] In *Bonner v. City of Prichard, Ala.***,** 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

[14] "When Section 1983 is used as a parallel remedy for violation of [Title VII], the elements of the two causes of action are the same." *Cross*, *supra.* (citing *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir. 1982)). *See Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1082-83

burden of production and an order for the presentation of proof in discrimination cases.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).   Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima facie case of unlawful race discrimination by a preponderance of the evidence.  411 U.S. at 802.  A prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."  *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977).

If the plaintiff establishes a prima facie case of racial discrimination, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-discriminatory reasons for its employment action.  *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).  "This intermediate burden is 'exceedingly light.'"  *Id.* (citing *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)).   The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced.  *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253-255 (1981).

Once the employer satisfies this burden of production, "the presumption of

_____

(11th Cir. 1996) (noting that Title VII and Section 1983 race discrimination claims supported by circumstantial evidence are  evaluated using the framework set out . . .  in *McDonnell Douglas*); *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995) (in cases where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same); *Portera v. State of Ala. Dept. of Finance,* 322 F. Supp. 2d 1285, 1294 (M.D. Ala. 2004) (noting that the "framework traditionally applied to Title VII claims also applies to a claim for a § 1983 violation based on Equal Protection Clause").

discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citations omitted). The establishment of a prima facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987); *Pace v. Southern Ry. Sys.*, 701 F.3d 1383, 1389 (11th Cir. 1983). After an employer proffers non-discriminatory reasons for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual." *Chapman*, 229 F.3d at 1037.

In the case *sub judice*, Defendants argue that Plaintiff cannot establish a prima facie case of discrimination because he cannot show that he was treated disparately from employees outside his protected class. The Eleventh Circuit has explained that, for the usual disparate treatment case where direct evidence is not present, "a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holified,* 115 F.3d at

1561-62 (citations omitted).

As Defendant properly argues, Plaintiff fails to establish a prima facie case because he cannot satisfy the third prong.  Namely, Plaintiff cannot establish that he was treated differently than a similarly situated employee outside his protected class.  The undisputed facts establish that Plaintiff was terminated on June 28, 2002 for insubordination and possession or use of intoxicating liquors, or proceeding to or from work under the influence of liquor or controlled substances.  Plaintiff has not identified nor introduced evidence regarding any appropriate comparator.  However, Lowery, the Caucasian co-worker, who Plaintiff claims consumed alcohol at Plaintiff's residence during work hours, serves as a perfect comparator in this case.  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368-1369 (11th Cir. 1999) (" . . . the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges'").  Lowery was charged with the same conduct as Plaintiff and did not receive favorable treatment as he was also terminated on the same date as Plaintiff.  Hence, Plaintiff cannot establish that he was treated differently than a similarly situated employee outside of his protected class.  Thus, the court concludes that Plaintiff has failed to establish a prima facie case of discrimination as to his Sections 1983 and 1981 claims for association discrimination, and Defendants are entitled to summary judgment.[15]

---

[15] The court notes that, even if Plaintiff could establish a prima facie case on these claims, summary judgment in Defendants' favor is warranted.  Plaintiff has failed to produce *any* evidence

2.     *Procedural Due Process*

Plaintiff claims that Defendants violated his procedural due process rights under the Fourteenth Amendment by terminating his employment without conducting a due process hearing prior to the termination.  Plaintiff asserts that he, as a tenured public employee, had a property interest in his job and thus was entitled to procedural due process protection.  He further asserts that McLendon wrongfully terminated his employment on June 28, 2002 without affording him a pre-termination hearing.  Plaintiff concedes that he received a post-termination hearing but claims that this hearing does not satisfy due process requirements in the public employment context.

The Supreme Court announced the doctrine applicable to procedural due process

---

for a reasonable factfinder to conclude that Defendants' proffered reason for his disciplinary termination is pretextual. *See Chapman*, *supra.* ("[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual.").  A denial by Plaintiff of his admission to the polygraph examiner does not prove that Defendants' proffered reason is pretextual because, even were it conceded that Plaintiff actually did *not* tell the examiner that he consumed alcohol during working hours on numerous previous occasions,  the relevant inquiry is whether Defendants *believed* that he had done so when they terminated him. *See, e.g., Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) (holding that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct"); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3rd Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken.") (citation omitted); *cf. E.E.O.C. v. Total System Servs., Inc.,* 221 F.3d 1171, 1176 (11th Cir. 2000) (holding that the plaintiff "could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation") (citations omitted).  The record reflects that, on the date McLendon terminated Plaintiff, he had been told by Carter, the polygraph examiner, that Plaintiff admitted drinking on the job during working hours on numerous previous occasions.  In addition, upon questioning Plaintiff about this admission, Plaintiff told McLendon that he had "just told Carter the truth about drinking on the job." (McLendon Aff. at ¶ 10).  Such information gave McLendon a good-faith basis for believing that Plaintiff had engaged in the conduct at issue.

issues in *Parratt v. Taylor*, 451 U.S. 527 (1981), and later extended that doctrine in *Hudson v. Palmer*, 468 U.S. 517 (1984). "Under the rules gleaned from these two cases, an unauthorized intentional or negligent deprivation of property by a state employee does not constitute a violation of the procedure requirements of the Due Process Clause of the Fourteenth Amendment if the state provides a meaningful post-deprivation remedy for the loss." *Hill v. Manning*, 236 F. Supp.2d 1292, 1298 (M.D. Ala. 2002) (Albritton, J.) (citing *Tinney v. Shores*, 77 F.3d 378, 381-82 (11th Cir. 1996)).

In applying *Parratt* and *Hudson,* a distinction is drawn between cases in which a state process itself is challenged, and cases in which the procedures as applied are challenged. *See Bell v. City of Demopolis,* 86 F.3d 191, 192 (11th Cir. 1996) (distinguishing between a challenge to the state procedure itself and a challenge to the state procedure as applied). The significance of the distinction is that when a state actor takes unauthorized action, the procedural due process violation does not become complete until the state refuses to provide due process. *McKinney v. Pate,* 20 F.3d 1550, 1563 (11th Cir. 1994). The rationale for this distinction rests with the fact that once a state, or in this case a municipality, has established procedures for the termination of an employee, it cannot predict whether or not, in a given situation, those procedures will be followed or ignored. *See Hill, supra.* Therefore, when a state official takes intentional unauthorized action that was not preventable beforehand by the state, no procedural due process violation occurs unless the state fails to provide the opportunity to redress the situation after the fact. *Id.*

This "as applied" portion of the *Parratt/Hudson* doctrine was thoroughly discussed by this court in *Lumpkin v. City of Lafayette,* 24 F. Supp. 2d 1259 (M.D. Ala. 1998) (Albritton, J.).  In *Lumpkin,* a city police chief was terminated from his position and based a procedural due process claim on the fact that the mayor and city council did not comply with the proper procedure for terminating Merit System employees.  *Id.* at 1263-64.  Unlike the cases in which plaintiffs had challenged the constitutional adequacy of the established procedures,[16] *Lumpkin* presented a different situation in which the plaintiff alleged that the mayor and city council members acted in contravention to an established city procedure for the termination of public employees.  *Id.* at 1264-65 ("If [plaintiff] had alleged that the mayor and council members acted pursuant to the city's procedures, or in the absence of any procedures, the violation of his procedural due process rights would have been complete at the moment of his termination, assuming that due process entitled him to notice and a hearing.").  *See Carter v. Harris,* 64 F. Supp. 2d 1182, 1189-90 (M.D. Ala. 1999) (holding that a plaintiff's claim that a public university violated its handbook procedures for employment termination raised a claim falling within *Parratt/Hudson* ).  Because the plaintiff only argued that the unauthorized actions of city officials deprived him of his property in violation of his due process rights, Judge Albritton held that the case fell squarely within rules set forth in *Parratt* and *Hudson.  Id.* at 1265.  Consequently, Judge Albritton held that

---

[16]   *See Enterprise Fire Fighters' Assn. v. Watson*, 869 F. Supp. 1532 (M.D. Ala. 1994) (Thompson, J.) (holding that a firefighter who was terminated without receiving notice or a hearing stated a procedural due process claim because the city officials acted pursuant to established procedures which caused the due process violation).

the plaintiff had to demonstrate the absence of a meaningful state post-deprivation remedy in order to make out a procedural due process violation.  *Id.*

Similar to *Lumpkin*, this case also falls within the parameters of *Parratt* and *Hudson.* Assuming that Plaintiff is correct in his assertion that he was wrongfully terminated on June 28, 2002 when McLendon gave him his termination letter, he only alleges that Defendants deviated from the established disciplinary procedure[17]--that is, Plaintiff was not terminated by McCullough, his immediate supervisor, as called for under the Water Board's Employee Complaint or Grievance Procedure (hereinafter "Grievance Procedure").[18]  (Pl. Br. at p. 7). In addition, Plaintiff generally argues that he received no pre-termination hearing, but fails to assert whether this omission was in contravention to the Water Board's established procedures or due to an absence of established procedures.  (*Id.* at p. 9).  Because such a claim is subject to the rules announced in *Parratt* and *Hudson,* the Plaintiff must establish the absence of a meaningful post-deprivation remedy to survive Defendants' motion for summary judgment.[19]

---

[17]  The Plaintiff gives no indication in any of his briefs or pleadings that he is challenging the constitutional sufficiency of the Water Board's procedures.

[18]  The court notes that Plaintiff fails to present any evidence to support these allegations as the Water Board's Grievance Procedure provided that "[s]upervisors may dismiss an employee for cause . . ."  (Pl. Ex. 5 at p. 4).  There is no qualification that only an employee's immediate supervisor can dismiss an employee.  Moreover, it is undisputed that McLendon, as General Manager of the Water Board, has the authority to hire and fire employees.  (McLendon Decl. at ¶ 3).

[19]  For the first time in this action, in his response to the motion for summary judgment, Plaintiff states that his due process challenge involves attacking the absence of a pre-termination proceeding when he was terminated.  (Pl. Br. at p. 9) ("Due process for a tenured public employee requires a pre-termination opportunity to respond to the employer's charge. . .  It is undisputed that

The facts clearly indicate that Plaintiff has availed himself of the post-termination administrative remedies provided to the Water Board's employees. Although Plaintiff did not directly appeal his termination decision, he submitted a letter requesting reinstatement which the Water Board treated as a grievance. As a result, a hearing was held and Plaintiff's request for reinstatement was reviewed by the Grievance Committee and the Water Board. Notwithstanding, Plaintiff's request was denied and McLendon's termination decision was upheld. Plaintiff has not alleged nor do any facts in the record indicate that this mechanism is inadequate to remedy a procedural due process violation. *See Bell,* 86 F.3d at 192. As the Supreme Court stated in *Parratt,* "Although the state remedies may not provide the respondent with all the relief which may have been available under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt,* 451 U.S. at 544.

In conclusion, because Plaintiff only challenges the alleged unauthorized actions of McLendon he cannot establish a procedural due process violation if the Water Board

---

Plaintiff received no pre-termination proceeding of any sort, nor can the subsequent post-termination hearing make up for that lack.") (citation omitted). This characterization cannot belie the fact that the meat of Plaintiff's Complaint--bias on the part of McLendon and his "misuse" of the Grievance Committee (Compl. at pp. 4-5)--amounts to an "as applied" attack. The Complaint does not contain any allegations pertaining to the constitutionality of the Water Board's Grievance Procedure nor the absence of Plaintiff's pre-termination hearing. Moreover, the parties submitted no evidence which sets forth the Water Board's procedures for dismissal of an employee (if any exist); thus there is no evidence before this court which establishes whether those procedures require a pre-termination hearing--evidence which is necessarily required in order for the court to evaluate the constitutionality of the established procedures. Consequently, the court concludes that Plaintiff is not attacking the termination process itself, rather he is the attacking the process as applied to him.

provides him with a meaningful post-deprivation remedy for his loss.  Because the Water Board provided such a remedy in the form of its Grievance Process, Plaintiff's procedural due process claim under Section 1983 is subject to summary judgment.  Defendants are thus entitled to summary judgment on this claim.

>    3.    *First Amendment*

As stated, once the party seeking summary judgment has informed the court of the basis for the motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate.  *Celotex,* 477 U.S. at 323; *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115-17 (11th Cir. 1993).  Plaintiff mentions his First Amendment claim in his Complaint, and he has not expounded upon this claim since then; he has not submitted any evidence to support this claim.  Because Plaintiff has not met his burden, summary judgment will be granted on this claim.  *See Portera ,* 322 F. Supp. 2d at 1293.

D.    *State Law Claim*

As aforementioned, Plaintiff also brings a procedural due process claim under state law.  However, the court declines to retain supplemental jurisdiction over this state law claim and will dismiss it without prejudice.  *See* 28 U.S.C. § 1367 (c)(3) (court may decline to exercise such supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir.1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial).  Accordingly, the court finds that the state law claim remaining in this action is best

resolved by the Alabama state courts.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.      The Defendants' Motion for Summary Judgment (Doc. # 18) is GRANTED in relation to all of the federal claims alleged under 42 U.S.C. §§ 1981 and 1983; and the state law claims of outrage, intentional infliction of emotional distress, wantonness, and  respondeat superior.

2.      Plaintiff's procedural due process claim alleged under state law against Defendants is DISMISSED WITHOUT PREJUDICE.

3.      The pretrial conference set for July 12, 2005 is CANCELED.

The Clerk of the Court is hereby DIRECTED to remove the above-styled case from the August 15, 2005 trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 5th day of July, 2005.


                              _____/s/ Mark E. Fuller_____
                              CHIEF UNITED STATES DISTRICT JUDGE